| | | |
|---|---|---|
| SUSAN FAIRWEATHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13-cv-00111-JAW |
| | ) | |
| FRIENDLY'S ICE CREAM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTIONS IN LIMINE

With trial looming, the Plaintiff and Defendant have both moved in limine to exclude various pieces of evidence. The Plaintiff's first motion seeks to exclude the testimony of certain witnesses listed by the Defendant on the ground that the Defendant committed discovery violations. The Court agrees that the Defendant failed to fully meet its disclosure and discovery obligations, but it declines to exclude the witnesses. Instead, the Court suggests means by which the prejudice from Defendant's failure may be ameliorated. The Plaintiff's second motion seeks to exclude evidence of any discipline imposed by the Defendant's predecessor corporation before it declared bankruptcy. The Court concludes that the evidence of the Plaintiff's entire history with Friendly's is admissible. Finally, the Defendant argues that evidence of other employee misconduct and discipline is inadmissible. The Plaintiff concedes and the Court agrees that evidence of other employee misconduct unrelated to rudeness is inadmissible. However, the Court concludes that evidence of employee rudeness and discipline due to that rudeness is admissible.

# I.    SUSAN FAIRWEATHER'S MOTIONS

## A.    Plaintiff's First Motion

Ms. Fairweather seeks to exclude the trial testimony of Susan Kallio, Nicole Dipietrantonio, Patricia Chadbourne, and Muriel Sanborn on the basis that Friendly's Ice Cream, LLC (Friendly's) "did not disclose the witnesses in response to Plaintiff's relevant discovery." *Pl.'s Mot. in Limine to Exclude Previously Unidentified Witnesses* at 1 (ECF No. 74) (*Pl.'s First Mot.*).  According to Ms. Fairweather, in her interrogatories to Friendly's she asked for disclosure of those individuals who would (1) support Friendly's affirmative defenses or (2) provide "information to support Defendant's assertion that it did not discriminate against [Ms. Fairweather] due to her age." *Id.* at 2.  In response to her requests, Ms. Fairweather says that Friendly's did not disclose the names of any individuals, and instead referred to its initial disclosure. *Id.*  Ms. Fairweather explained that while the initial disclosure contained the names of eight individuals and "a summary of each witnesses' knowledge," and Friendly's "reserve[d] the right to supplement this disclosure with any additional individuals identified during discovery and shall provide such information when and if it becomes available," she asserts that Friendly's never supplemented its interrogatory responses or initial disclosure. *Id.*  Instead, Friendly's disclosed the names of these four trial witnesses for the first time in its final pre-trial memorandum, and therefore, "did not comply with the applicable rules governing the timely disclosure of discoverable evidence," specifically, Rules 26 and 33. *Id.*

In response, Friendly's counters that it disclosed Ms. Kallio in its supplemental initial disclosures more than a month before the close of discovery, and Ms. Fairweather was aware that Ms. Kallio could be called as a witness as evidenced by (1) her inclusion of Ms. Kallio in her own initial disclosure, (2) based on Ms. Dipietrantonio and Ms. Fairweather's own deposition testimony identifying Ms. Kallio as someone at Friendly's who overheard certain relevant incidents, and (3) Friendly's submission of Ms. Kallio's affidavit in support of its motion for summary judgment. *Def. Friendly's Ice Cream, LLC's Opp'n to Pl.'s Mot. in Limine to Exclude Purportedly Undisclosed Witnesses* at 1-4 (ECF No. 94) (*Def.'s Opp'n to Pl.'s First Mot.*).

Regarding the other three witnesses, Friendly's concedes that it did not include their names in its initial disclosure or supplemental initial disclosure, but it "generally identified the employees at the South Portland restaurant at the relevant time." *Id.* at 4. In other words, Ms. Fairweather "was at least on notice" that these "individuals may possess information discoverable in this matter." *Id.* Friendly's also argues that she had actual knowledge because "she herself identified these individuals in her initial disclosures or discovery responses." *Id.* Furthermore, Friendly's notes that if the Court grants any part of Ms. Fairweather's First Motion, the Court should then exclude Ms. Fairweather's witness, Katherine Burke, because she was not disclosed by Ms. Fairweather. *Id.* at 6. In summary, Friendly's characterizes Ms. Fairweather's First Motion as "seek[ing] an order from the Court

excluding four individuals who were identified by both parties and for whom [she] clearly had knowledge of the discoverable information they possessed." *Id.*

Ms. Fairweather did not reply to Friendly's response.

### 1. Discussion

#### a. Friendly's Discovery Responses

On May 3, 2013, Friendly's filed its initial disclosure pursuant to Federal Rule of Civil Procedure 26(a)(1). *Pl.'s First Mot.* Attach. 2 *Def.'s Initial Disclosure.* Friendly's listed eight persons who were "likely to have discoverable information that Friendly's may use to support its claims or defenses" and Friendly's identified "the relevant subjects of information." *Def.'s Initial Disclosure* at 1-3. Friendly's listed none of the four witnesses who are the subject of Plaintiff's motion; however, Friendly's observed that "[n]umerous other employees at the South Portland restaurant observed numerous instances of Plaintiff's abusive, volatile, and manipulative behavior over the years of working with her." *Id.* at 3. Friendly's "reserve[d] the right to supplement this disclosure with any additional individuals identified during discovery," but promised to "provide such information when and if it becomes available." *Id.*

In response to Plaintiff's interrogatories five and six, which had requested the names and other information about persons with information about Friendly's denial of liability, and for each listed person, a description of his or her information, Friendly's interposed multiple objections and then referred "Plaintiff to its Initial Disclosures, served on May 3, 2013." *Pl.'s First Mot.* Attach. 1 *Friendly's Ice Cream,*

*LLC's Answers to Pl.'s First Set of Interrogs.* at 7. Friendly's later supplemented its initial disclosure for Susan Kallio but never supplemented its initial disclosure for the remaining three listed witnesses, Nicole Dipietrantonio, Patricia Chadbourne, and Muriel Sanborn. The Court therefore addresses Ms. Kallio separately from the other three witnesses.

### b. Susan Kallio

Friendly's supplemented its initial disclosure on October 29, 2013 and disclosed Ms. Kallio as someone likely to have discoverable information. *Def.'s Opp'n to Pl.'s First Mot.* Attach. 1 *Def.'s Supplemental Initial Disclosure*. The disclosure reads:

> Ms. Kallio is a longtime coworker of both Plaintiff and Catherine DiPietrantonio at the South Portland, ME restaurant and has knowledge of incidents of inappropriate conduct by Plaintiff, as well as the working conditions at the restaurant.

*Def.'s Supplemental Initial Disclosure* at 1. Friendly's served this supplemental disclosure on Plaintiff more than one month before the close of discovery. *See Order* (ECF No. 20) (extending the discovery deadline to December 6, 2013). Furthermore, on June 3, 2012, Ms. Fairweather included Ms. Kallio in her own initial disclosure. *Def.'s Opp'n to Pl.'s First Mot.* Attach. 2 *Pl.'s Initial Disclosure* at 2.

Although Friendly's supplemented its initial disclosure, it has never to the Court's knowledge supplemented its answers to interrogatories five and six. There is a crucial difference between an interrogatory answer, which is signed and attested to by a party, and an initial disclosure, which is signed by an attorney. *Compare Friendly's Ice Cream, LLC's Answers to Pl.'s First Set of Interrogs.* at 12 (corporate

attestation by Deanna Silva, Employee Relations Specialist, Friendly's Ice Cream, LLC), *with Def.'s Supplemental Initial Disclosure* at 3 (signed by defense counsel). An attested answer would be readily admissible at trial; an initial disclosure would present evidentiary hurdles before admission. Moreover, the party filing an interrogatory has the right to an answer to the interrogatory, not merely a reference to an unattested document.

Finally, Plaintiff's interrogatory asked for the witness's information and it relates back to the previous interrogatory, which asked about Friendly's assertion that it is not liable. The supplemental disclosure responds only in generalities about "incidents of inappropriate conduct" by Plaintiff and "working conditions at the restaurant." *Def.'s Supplemental Initial Disclosure* at 2.

At the same time, this situation is unusual because Ms. Kallio worked with Ms. Fairweather, and therefore, Ms. Fairweather listed Ms. Kallio as someone who had information about this case. In addition, as Friendly's points out, after it made a supplemental disclosure about Ms. Kallio, Ms. Fairweather failed to seek any further discovery even though the disclosure was made within the discovery period. *Def.'s Opp'n to Pl.'s First Mot.* at 2.

### c. Nicole Dipietrantonio, Patricia Chadbourne, and Muriel Sanborn

Regarding these three additional witnesses, Friendly's concedes that it failed to list them in its initial disclosure, to supplement the disclosure to include them, and to list them in its answers to interrogatories. Friendly's asserts that Ms. Fairweather was on notice that these witnesses might be called because in its initial disclosure, it

made a general reference to "[n]umerous other employees" at the South Portland restaurant. But, as Friendly's must acknowledge, Friendly's may not rely on Ms. Fairweather's knowledge that anyone who worked at Friendly's might know something of some relevance to the case as a means for complying with its disclosure and discovery obligations. Ordinarily, Friendly's failure to list these witnesses or provide responses to discovery would result in a sanction, including potential exclusion.

Here, the situation is more complicated because Ms. Fairweather included Ms. Dipietrantonio and Ms. Chadbourne in her own initial disclosure. In addition, during her deposition, Ms. Fairweather was asked a series of questions regarding these individuals' ages. *Def.'s Opp'n to Pl.'s First Mot.* Attach. 6 *Excerpts from the Dep. of Susan Fairweather* at 6, 8 (*Fairweather Dep.*). Again, this does not absolve Friendly's for its failure to comply with its disclosure and discovery obligations. Even assuming that Ms. Fairweather was aware that these witnesses may have had relevant information, it is important that Friendly's inform her that it intended to call these witnesses, even if she did not.

Regarding Muriel Sanborn, Friendly's conceded that neither it nor Ms. Fairweather included her in any initial disclosure. *Def.'s Opp'n to Pl.'s First Mot.* at 4. Even so, Ms. Fairweather listed Ms. Sanborn in her response to Friendly's interrogatories as someone with "knowledge of any of the facts you allege in the complaint and/or charge." *Def.'s Opp'n to Pl.'s First Mot.* Attach. 8 *Excerpts from Pl.'s Answers to Interrogs.* at 2.

### d.    Conclusion

Despite Friendly's protests, the Court concludes that Friendly's failed to comply with its discovery obligations for Ms. Kallio and its disclosure and discovery obligations for Nicole Dipietrantonio, Patricia Chadbourne, and Muriel Sanborn. Nevertheless, the prejudice to Ms. Fairweather from Friendly's failures remains unclear.  Friendly's has not been specific about what any of these witnesses are going to say and it is therefore difficult to assess how truly prejudicial Friendly's violations might be.  The record does not disclose whether these witnesses are going to testify for five minutes or five hours and what Friendly's really anticipates they will say.

By the same token, these witnesses are not unknown to Ms. Fairweather, she did not follow up with the supplemental disclosure for Ms. Kallio, and it is unclear whether she really knows what they know.  *See* FED. R. CIV. P. 37(c)(1) (explaining that a party may not use information it fails to disclose under Rule 26(a) "unless the failure was substantially justified or is harmless"); *Am. Nat'l Fire Ins. Co. v. York Cnty.*, No. 2:06-cv-200-GZS, 2008 U.S. Dist. LEXIS 37223, at *4 (D. Me. May 6, 2008) (declining to exclude undisclosed trial witness testimony "when both sides were clearly aware of the potential for [two individuals] to be witnesses thereby making the failure to disclose harmless . . . fairness dictates allowing each side to call either of these witnesses at the upcoming bench trial").

In this situation, witness exclusion is too severe a sanction.  It may be that counsel are able to agree on arrangements for a satisfactory middle ground.  The alternatives might include Friendly's providing Ms. Fairweather's attorney with the

information that it should have earlier supplied, allowing a pre-testimonial interview of the witnesses with both counsel present, or having Friendly's present each witness outside the presence of the jury and summarizing her direct testimony before she is called as a witness before the jury. The trial day runs from 8:30 to 2:30 each day, which should allow counsel time to arrange for one of these or some other alternative during trial. The Court will address this issue with counsel before the start of trial.

**B.** **Plaintiff's Second Motion**

Ms. Fairweather seeks exclusion of "any disciplinary actions taken against her prior to her hire by Defendant on January 9, 2012." *Pl.'s Mot. in Limine to Exclude any Evidence of any Disciplinary Actions Taken Against Pl. Prior to Her Hire by Def. on Jan. 9, 2012* at 2 (ECF No. 78) (*Pl.'s Second Mot.*). She points out that Friendly's Ice Cream Corporation filed a Chapter 11 bankruptcy petition, which led to her termination on January 8, 2012. *Id.* at 1. On January 9, 2012, she was hired by the Defendant, Friendly's Ice Cream, LLC. *Id.* at 2. According to Ms. Fairweather, evidence of any prior disciplinary actions taken against her by her "former employer" should be inadmissible under Rules of Evidence 401-03, 404, and 406, especially because "Defendant has used the bankruptcy as a shield to protect it and extinguish all prior claims. Defendant cannot now use [Ms. Fairweather]'s prior employment with the former company as a sword to attack the Plaintiff." *Id.*

In response, Friendly's argues that Ms. Fairweather "seeks to exclude evidence considered by those who investigated and made the decision to terminate [her] employment, information that is clearly relevant to their state of mind [as opposed to

character or habit evidence of Ms. Fairweather].” *Def. Friendly's Ice Cream, LLC's Opp'n to Pl.'s Mot. in Limine to Exclude Evidence of any Disciplinary Actions Taken Against Her Prior to Jan. 9, 2012* at 1-2 (ECF No. 95) (*Def.'s Opp'n to Pl.'s Second Mot.*). Friendly's also notes that Ms. Fairweather's personnel file contains several disciplinary warnings and notes “for conduct similar to what led to her discharge – rude or discourteous treatment of guests or co-workers. . . . [which] remained in her file through the date of her termination and were known to those who investigated the customer complaint that led to [her] termination and made the decision to terminate [her] employment.” *Id.* at 1. In addition, Friendly's points out that Ms. Fairweather cited no authority for her position that by filing for bankruptcy, Friendly's may not introduce her pre-bankruptcy disciplinary history to support its defenses. *Id.* Furthermore, although Friendly's concedes that ownership changed on January 9, 2012, it explains that “the restaurant personnel and management personnel in charge of the South Portland restaurant remained the same as they were under prior ownership.” *Id.* at 2.

Ms. Fairweather did not reply to Friendly's response.

### 1. Discussion

First, the Court anticipates that Ms. Fairweather's case will present an argument that will necessarily allow Friendly's to introduce her pre-bankruptcy employment history. During the motion for summary judgment, the parties agreed that Ms. Fairweather began working for Friendly's on August 1, 1988. *See Order Denying Def.'s Mot. for Summ. J.* at 4 (ECF No. 49). In fact, Ms. Fairweather argued

that after Friendly's emerged from bankruptcy, it devised "a secret plan to create a new image for itself by hiring younger servers and discharging older servers." *Id.* at 50. She contended that it was after the emergence from bankruptcy that she was subjected to age-related comments by her supervisors and she also argued that, unlike its treatment of younger workers, Friendly's terminated her for a first offense. *Id.*

Friendly's should be allowed to defend itself against these accusations. To respond to the argument about a "secret plan," one obvious potential defense is that there was no change between the "old" Friendly's and the "new" Friendly's in terms of personnel policies and discipline. Similarly, Ms. Fairweather has a right to paint herself as a loyal, long term, and valued employee of Friendly's, but Friendly's has an equal right to respond by noting that her entire employment history with Friendly's, both before and after bankruptcy, was not as Ms. Fairweather would have it be.

Next, regarding Ms. Fairweather's contention that evidence of her disciplinary history pre-bankruptcy constitutes impermissible character or habit evidence under Rules of Evidence 405-06, the Court disagrees. As Friendly's notes in its memorandum, this evidence may be used to demonstrate the state of mind of those individuals who investigated the customer complaint and ultimately concluded that Ms. Fairweather should be terminated. As explained by the First Circuit, "[w]hen assessing a claim of pretext in an employment discrimination case, the court must focus on the motivations and perceptions of the employer's decisionmaker." *Bonefont-*

*Igaravidez v. Int'l Shipping Corp.*, 659 F.3d 120, 126 (1st Cir. 2011).  Here, such evidence may explain those motivations and perceptions.

Third, regarding Ms. Fairweather's contention that such evidence is irrelevant under Rules of Evidence 401-03, the Court disagrees.  Evidence of her prior disciplinary history goes to the heart of Friendly's defense.  Again, it speaks to "the motivations and perceptions" of those who ultimately decided to terminate Ms. Fairweather.

Finally, regarding Ms. Fairweather's contention that such evidence should be excluded because Friendly's ownership changed subsequent to January 9, 2012 as a result of a bankruptcy filing, the Court disagrees.  As Friendly's observes, "[n]either the Bankruptcy Code nor the Order entered by the United States Bankruptcy Court for the District of Delaware bar the introduction of any evidence in post-petition matters."  *Def.'s Opp'n to Pl.'s Second Mot.* at 4; *see also id.* Attach. 2 *Order Confirming Debtors' First Am. Plan of Liquidation*.  This is not surprising.  The purpose of the Bankruptcy Code is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."  *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554-55 (1915).

In contrast, it is not the purpose of the Bankruptcy Code to restrict the type of evidence Ms. Fairweather seeks to exclude here.  If the Court were to adopt Ms. Fairweather's position, a new owner of a business (such as Friendly's) would have to pretend that certain events leading to an employee's termination (such as Ms.

Fairweather) never happened, even though it employs a similar or identical workforce that existed pre-bankrupty—the same workforce that ultimately terminated the employee.

It may come down to an issue of proof. It may be that the new Friendly's cut ties entirely with the old one, required employees to reapply, did not maintain their personnel files from the old employer, did not accord the employees of the old business any seniority rights, such as vacation and similar benefits that often increase with service, and essentially treated the new Friendly's as an entirely new business in its dealings with its employees. It may also be that the new Friendly's maintained many aspects of the old company. Here, it appears that the new Friendly's retained the old Friendly's personnel files and took into account Ms. Fairweather's entire history with the company, not merely the period from January 9, 2012, the date of the sale, onward.

Finally, even if the old Friendly's was a completely separate business, if the new Friendly's decided to take a chance and hire a waitress from a competitor who had a history of irascible conduct with customers, the new Friendly's could, if it chose, take the employee's entire employment history into account in determining whether new conduct merited termination.

The Court denies Plaintiff's Second Motion.

## II. FRIENDLY'S MOTION

### A. Defendant's First Motion

Friendly's seeks to exclude any evidence presented at trial by Ms. Fairweather under Rules of Evidence 401 and 403 "regarding complaints received by Friendly's or discipline issued by Friendly's for server conduct that either: (1) does not identify a specific server; or (2) does not concern similar conduct for which [she] was terminated – rude/discourteous treatment of guests." *Def. Friendly's Ice Cream, LLC's Mot. in Limine to Exclude Pl.'s Presentation of Test., Evidence, or Arguments Regarding Compls. Received or Discipline Issued for Reasons Other than a Server Being Rude to Customers or Within Earshot of Customers* at 1 (ECF No. 75) (*Def.'s First Mot.*). Friendly's anticipates that Ms. Fairweather will argue that it received numerous customer complaints regarding other servers, "but never disciplined or terminated those accused other than her." *Id.* Friendly's contends that these complaints "really concern[] other kinds of issues such as the cooking of food or simply poor, rather than rude, service," and some "do not identify the offending server, making discipline by Friendly's all but impossible." *Id.* at 1-2. Therefore, Friendly's requests the Court "limit [Ms. Fairweather]'s presentation of evidence regarding customer complaints to those few complaints that actually identify by name a server who was being rude to a customer. Only then could the Court focus on those that might potentially be 'similarly situated' and relevant to this case." *Id.* at 2. To support its position, Friendly's cites an array of caselaw and excerpts from the Court's earlier order denying Friendly's motion for summary judgment. *Id.* at 4-5.

In response, Ms. Fairweather opposes Friendly's first request (exclusion of complaints that do not identify a specific server) but "stipulates" to Friendly's second

request (exclusion of complaints that do not concern rude/discourteous treatment of customers). *Pl.'s Opp'n to Def. Friendly Ice Cream's Mot. in Limine to Exclude Discipline for Other than Rudeness or Within Earshot of a Customer* at 1 (ECF No. 99) (*Pl.'s Opp'n to Def.'s First Mot.*). She argues that complaints concerning rudeness that do not identify a specific server are nevertheless relevant because Friendly's "has consistently argued that customer complaints about rude behavior were few and far between," and thus, shall be used to dispute the issue of the number of complaints relating to rudeness. *Id.* at 1-2. In addition, Ms. Fairweather contends that Friendly's "assertion is simply a smokescreen to conceal the fact that [it] constantly received complaints of rudeness from customers, yet, except for [Ms.] Fairweather, it did not terminate employees under such circumstances." *Id.* at 2. Ms. Fairweather describes two complaints it intends to introduce at trial, which she asserts "is directly relevant to the issue[] of . . . whether Friendly's truly did summarily terminate employees for complaints of rudeness received from customers." *Id.* at 2-3.

Friendly's did not reply to Ms. Fairweather's response.

### 1. Discussion

Because Ms. Fairweather agrees with Friendly's that complaints unrelated to rude/discourteous treatment of customers should be excluded at trial, the Court grants Friendly's motion as regards this aspect of its motion.

As regards Friendly's request that customer complaints relating to rudeness that do not identify the name of a specific server be excluded at trial, the Court denies its request. First, as Ms. Fairweather observes, Friendly's asserts that "customer

complaints of rude behavior upon which Friendly's could act were few and far between." *Def.'s First Mot.* at 1. Ms. Fairweather may introduce evidence of these complaints to refute Friendly's contention. Relatedly, Friendly's contends that "it is impossible to determine the age of the server involved and thus whether Friendly's practices favored younger servers as [Ms. Fairweather] alleges" without a server's name in the complaint. *Id.* at 3. However, these complaints put Friendly's management on notice of problems at the South Portland location regarding rude behavior by its server(s), regardless of who that server was, and such notice is relevant to their motives for terminating Ms. Fairweather.

The Court grants in part and denies in part Defendant's First Motion.

## III. CONCLUSION

The Court:

DENIES IN PART and DEFERS IN PART Plaintiff's Motion in Limine to Exclude Previously Unidentified Witnesses (ECF No. 74);

GRANTS IN PART and DENIES IN PART Defendant Friendly's Ice Cream, LLC's Motion in Limine to Exclude Plaintiff's Presentation of Testimony, Evidence, or Arguments Regarding Complaints Received or Discipline Issued for Reasons Other than a Server Being Rude to Customers or Within Earshot of Customers (ECF No. 75); and,

DENIES Plaintiff's Motion in Limine to Exclude any Evidence of any Disciplinary Actions Taken Against Plaintiff Prior to Her Hire by Defendant on January 9, 2012 (ECF No. 78).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of January, 2015